GEORGE W. THOMPSON *v.* MARIE W. THOMPSON

73-11                                        496 S.W. 2d 425

Opinion delivered July 9, 1973

*Herndon & Barton, P.A.,* for appellant.

*Osborne W. Garvin,* for appellee.

[1]See *Furman* v. *Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed. 2d 346 (June 29, 1972).

CONLEY BYRD, Justice. Appellant George W. Thompson and appellee Marie W. (Thompson) Garvin were divorced in October 1967. That decree provided:

". . . that plaintiff be and she is hereby awarded exclusive use and possession of the residence of the parties. . . , and that defendant be and he is hereby ordered to make the monthly payments on the mortgage. . . as they mature; that in addition to payment on the residence, defendant be and he is hereby ordered to pay to plaintiff the sum of $200.00 per month for the care and support of the minor children and alimony to the plaintiff."

At the time of divorce appellant had a retirement and disability income of $538.99 per month.

On August 8, 1968, one of the three girls married and appellant reduced the $200.00 per month payment to $150.00. When the second oldest girl became 18 and self-supporting, he reduced the payments to $75.00 per month. After appellee remarried and rented the residence, he ceased making the mortgage payments. At the time of trial his retirement and Veterans Disability pay had increased to $773.00. This amount being tax free.

Upon petition of appellee, the trial court found that appellant was liable for accrued child support arrearages in the amount of $3,700 and accrued mortgage payment arrearages in the amount of $2,163. The residence was ordered to be sold and the proceeds divided between the parties. Child support for the remaining child was fixed at $150 per month. For reversal appellant contends:

"I. The Court erred in awarding judgment to the appellee for arrearages in child support despite the agreement between the parties for reduction following marriage and attainment of majority and erred further in awarding judgment to appellee for the monthly mortgage indebtedness payments on the property following her remarriage and having vacated same and receiving rental sums in excess of the mortgage indebtedness due thereon. These judgments would

result in an unjust enrichment to appellee and further in an inequitable financial hardship to the appellant.

II. The Court erred in awarding future child support of One Hundred Fifty Dollars ($150.00) per month to the daughter remaining at home, in view of the income and physical condition of appellant.

III. The Court erred in failing to give credit for the extensive government benefits received by two of the daughters while in college in the amount of One Hundred Seventy-Five Dollars ($175.00) per month per daughter.

There is a dispute between the parties as to the alleged agreement to reduce the child support payments to $150 upon the marriage of the daughter. We cannot say that the chancellor's finding on this issue is contrary to a preponderance of the evidence.

In *Cash* v. *Cash,* 234 Ark. 603, 353 S.W. 2d 348 (1962), and *Hinton* v. *Hinton,* 211 Ark. 159, 199 S.W. 2d 591 (1947), we held that sums paid from social security payments and military allotments should be credited to child support awards. The $175 per month here given by the Veterans Administration to a child of a disabled veteran while enrolled in college does not necessarily fall within the same category—*i.e.,* it is a specialty item available for use only under specified circumstances as distinguished from allotments and social security payments which are generally available for ordinary use. Whether the Veterans' benefits should be credited when the matter of child support for college is specifically mentioned in a divorce decree or at a time when a college education is the only issue is not before us.

Appellant to avoid the accrued arrearages relies upon cases from other jurisdictions such as *Conklin* v. *Conklin,* 223 Minn. 449, 27 N.W. 2d 275 (1947). However, we feel that appellant's unilateral reduction is controlled by our own precedents such as *Jerry* v. *Jerry,* 235 Ark. 589, 361 S.W. 2d 92 (1962), wherein we said:

"From the above there appears two sufficient reasons why appellant here could not, of his own volition, reduce the $200 monthly payment due on March 1, 1961. One is that the court (and the court alone) had the right to change the amount of the award for the support for the two minor children—which the court in fact did later do. The other reason is that the court, had the facts and circumstances justified, could have continued the original award for not only the two minors but also for Bobby Jean who had become of age. The fact that the trial court later found appellant was under no obligation, under the circumstances, to support Bobby Jean gave appellant no right to voluntarily stop part payment. A third reason might also be added—the award of $200 was for the maintenance of three children and appellant had no right to conclude that $66.67 was for Bobby Jean."

In upholding the ruling on the arrearages, we like the trial court point out that litigation such as this could be avoided by setting forth in the decree under what circumstances monthly child support and alimony payments terminate without the necessity of court intervention.

The trial court in setting the $150 per month child support for the remaining girl stated:

". . . I would reduce it further, except for the fact there is quite an expensive orthodontic bill here, some thousand or so dollars, which is $35.00 a month or something like that. . ."

While on the evidence presented, we cannot say that the chancellor abused his discretion, we do point out that the award is on the liberal side. Furthermore, we understand from the record that once the orthodontic bill is out of the way appellant will be entitled to a substantial reduction.

Affirmed with each party to bear his own costs.

HOLT, J., not participating.